MALLERY, Respondent, v. GRIFFIN, Appellant.

(177 N. W. 818.)

(File No. 4670.    Opinion filed May 24, 1920).

1. **Appeals—Assignments of Error—Insufficiency of Evidence, Failure to Particularize, Effect, Rulings on Evidence, Non-prejudicial, Not Discussed.**

Assignment of error re insufficiency of evidence to sustain findings, will not be considered where they fail to particularize wherein evidence is claimed to be sufficient.   Nor will assignments involving rulings on evidence be discussed, where none of them could have prejudiced appellant.

2. **Appeals—Practice—Question First Raised on Appeal, Non-consideration Of.**

A question not appearing to have been suggested at the trial or considered by trial court, cannot be raised for first time on appeal.

3. **Taxation—Tax Levy, Itemized Statement of Expenses as Limitation Re—Total Levy Above Statutory Limitation Plus Five Per Cent, Invalid Levy, Void Tax Deed—Statute.**

Under Sec. 2137, Rev. Pol. Code 1903, as amended by Laws 1905, Ch. 43, providing that the county tax levy shall be based upon itemized statement of county expenses of ensuing year, and no greater levy shall be made upon taxable property than equals such expenses with an excess of 5%, held, that where the estimate for county general fund was $21,450, and the estimate recites, re county fund: "as there is an income into this fund of $7000, it leaves about $14,550 to be provided by levy;" the estimate for salary fund being $11,918.32 with an income into this fund of $2522.95, "leaving $9395.37 to be provided for by levy"—said estimates are sufficiently definite; but, the amount actually levied by county board for general fund being $14,821.55, while amount levied for salary fund was $9881.03, and the total county levy including several other funds aggregating more than 5% in excess of statutory limitation, the levy was void; and a tax deed based thereon is void, since the unlawful levy resulted in injury to the taxpayer.

4. **Taxation—Statutory Regulations Re Levy, Assessment, How Far Mandatory, Directory—Regulations Re Procedure, and Those Affecting Property Rights, Distinguished.**

Statutory regulations for guidance of officers in conducting of official business, in limiting their power or rendering its exercise in disregard of requisitions ineffectual, are generally designed

to secure order, system and dispatch in proceedings, and are not usually regarded as mandatory unless accompanied by negative words importing that the act required shall not be done in any other than the designated manner or time. But when the prescribed requisitions are intended for protection of the citizen, and to prevent sacrifice of his property, and by disregard of which his rights might be, and generally would be, injuriously affected, they are not directory but mandatory, and must be followed or the acts done will be invalid; and the officer's power in such cases is limited by the measure and conditions prescribed for its exercise. Therefore **held,** that Rev. Pol. Code 1903, Sec. 2137, as amended by Laws 1905, Ch. 43, providing that no greater levy of county tax shall be made upon taxable property than will equal amount of estimated expenses with an excess of 5%, is mandatory.

Appeal from Circuit Court, Hughes County. HON. JOHN F. HUGHES, Judge.

Action by J. E. Mallery, substituted for Charles H. Anderson and E. F. Swartz, to quiet title to realty. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

*W. E. Miller, Johnson & Johnson,* and *Gardner & Churchill,* for Appellant.

*Sutherland & Payne,* for Respondent.

(4) To point four of the opinion, Appellant cited: Kipp v. Dawson (Minn.) 17 N. W. 961; State v. Minn. Power Co. (Minn.) 141 N. W. 840.

SMITH, J. [1] Action to quiet title. Findings and judgment for plaintiff. Defendant appeals from the judgment and an order overruling motion for new trial. There are 26 assignments of error. The first 12 which relate to rulings on evidence we do not deem of sufficient importance to warrant discussion, as none of them could have resulted in prejudice to appellant. Appellant also assignes as error insufficiency of the evidence to sustain certain findings. None of them can be considered. They do not point out particulars in which the evidence is claimed to be insufficient.

[2] Plaintiff's title rests upon a trust deed from one Brink, now deceased, to C. H. Anderson and E. F. Swartz, as trustees with full power of alienation, from whom plaintiff Mallery, received title in fee. Appellant in his brief contends that the trust

deed is void because in violation of the statutes of this state against restraints upon alienation and against perpetuities, and urges the well-settled rule that plaintiff must recover, if at all, upon the strength of his own title. It is sufficient to observe that this question does not appear to have been suggested at the trial or considered by the trial court, and cannot be raised for the first time upon this appeal. Furthermore, it is not presented by any proper specification or assignment of error, and for these reasons we shall not consider it.

Appellant pleaded title in himself under a tax deed, and by counterclaim sought to have his title quieted against plaintiff. The trial court found plaintiff, Mallery, to be the owner in fee simple of the land, subject to the rights, if any, of defendant by reason of the tax deed; the trial court further found that the treasurer of Hughes county executed and delivered to defendant a tax deed on November 3, 1917, which was filed and recorded November 6, 1917; that said deed was based upon a tax sale of December 8, 1913, for delinquent taxes of 1912; that on September 3, 1912, at a meeting of the county commissioners, the county auditor presented to the commissioners an estimate of expenses of Hughes county for the ensuing year upon which to base the levy of taxes, which estimate, as shown by the record before us, was adopted and approved by the board on that day, and published as required by law.

Section 2137, Rev. Pol. Code 1903, as amended by chapter 43, Laws of 1905, then in force provides:

"Such taxes shall be based upon an itemized statement of the county expenses of the ensuing year, which statement shall be included in the published proceedings of said board; and no greater levy of county tax shall be made upon the taxable property of any county than will be equal to the amount of such expenses, with an excess of five per cent of the same."

[3] On September 3, 1912, the board of county commissioners met and proceeded to make a levy of taxes for the ensuing year. They first adopted an itemized estimate of the county expenses of the ensuing year, which estimate was thereafter included in the published proceedings of the board, as required by the statute. The aggregate of items in the estimate for the county general fund was $21,450. The estimate recites:

"As there is an income into this fund of $7,000, it leaves about $14,550 to be provided by levy."

For salaries of officers the amount estimated was $11,918.-32, with an income into this fund of $2,522.95, leaving $9,395.37 to be provided for by levy." The estimate of the amount required to be levied for the insane fund is $1,920. The estimate of the amount to be levied for the bridge fund is $9,000. The estimate for the road fund recites that there are now road fund warrants outstanding, $5,627.26, and that "this amount, including the amount needed for the ensuing year, ought to be provided by levy." Interest on bonded indebtedness estimated at $6,450 "with small amount for sinking fund must be provided by levy." Whether the last two items in the estimate are sufficiently definite to form a proper basis for the levy of a tax to meet the requirements of the two funds named we need not decide. As to the other funds named, the estimates are sufficiently definite, and for the purposes of this case we need only consider the levies actually made in connection with the estimates for these several funds respectively. The estimate for the county general fund was $14,550; the amount actually levied by the board for this fund was $14,821.55; the estimate for salary fund was $9,395.37; the amount actually levied by the board was $9,881.03; the estimate for the insane fund was $1,920; the amount actually levied by the board was $2,470.26; the estimate for the bridge fund was $9,000; the amount actually levied by the board was $9,981.-03. The aggregate estimates for these four funds was $34,865.37. Adding to this 5 per cent excess permitted by the statute, amounting to $1,743.26, the total possible aggregate levy, for these several funds amounts to $36,608.63. The aggregate of the total actual levy made for these funds was $37,153.87, resulting in an excess levy of $545.24.

[4] The decisions are numerous and conflicting as to what regulations for the levy and assessments of taxes are mandatory, and what are directory. We have found no better statement of the general rule than that announced by the Supreme Court of the United States in French v. Edwards, 13 Wall. 506, 20 L. Ed. 702, where it is said:

"There are undoubtedly many statutory requisitions intended

for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system, and dispatch in procedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizens, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

This rule was adopted and approved by the Supreme Court of Alabama in State Auditor v. Jackson County, 65 Ala. 142, the court saying:

"We concur in opinion with the Supreme Court of the United States, that those legislative directions which have for their object the protection of the taxpayer agains spoliation, or excessive assessment, must be treated as mandatory. But, if there be enough to show that the assessment is so made and evidenced as to be understood, then regulations designed for the information of the assessor, or other officer, intended to promote dispatch, method, system and uniformity in modes of proceeding, are merely directory."

We are of the view that our statute which declares that "no greater levy of county tax shall be made upon the taxable property of any county than will be equal to the amount of such expenses, with an excess of five per cent of the same," is mandatory.

The Oregon statute construed in Oregon R. Co. v. Umatilla Co., 47 Or. 198, 81 Pac. 352, does not contain the inhibitory language found in our statute. Board v. Nettleton, 22 Minn. 356; State ex rel. v. Wise, 12 Neb. 313, 11 N. W. 329; State ex

rel. v. Hare, 78 Or. 540, 153 Pac. 790; C., B. & Q. R. Co. v. People, 213 Ill. 458, at page 466, 72 N. E. 1105.

[5] Plainly a levy materially in excess of the amount required to meet county expenses as shown by the estimates upon which the levy is made by the board, together with a 5 per cent excess, must result in an unlawful injury to the taxpayer and must be held void. We are therefore of the view that for this reason alone the tax deed must be held void, and we deem it unnecessary to consider or discuss other irregularities urged by respondent. The order and judgement of the trial court are therefore affirmed.