# McFARLAND, Appellant v. KEENAN et al., Respondents
## (84 N.W.2d 884)

(File No. 9639. Opinion filed September 10, 1957)

**J. G. McFarland,** Watertown, Pro Se.

**Loucks, Oviatt & Bradshaw,** Watertown, for Defendants and Respondents.

SMITH, P.J.  Whether the County Commissioners of Codington County erred in refusing to abate the 1955 taxes levied on real property which was conveyed by appellant on May 27, 1955, to a religious corporation, and which has since been used by it for religious purposes, is the sole question presented to us by this appeal.

Prior to May 27, 1955, the real property in question, located in Watertown, South Dakota, was owned by the appellant above named.  On that date he conveyed to "The First Congregational Church of Watertown, Codington County, South Dakota" and since then the church has used the property as its parsonage.  In the assessment roll prepared by the assessor for that year, dated and filed with the equalization board of the city on June 30, 1955, the property was assessed in the name of the appellant. Later in the year the taxes in question were levied, and the consolidated tax was extended on the tax list. Knowledge of these facts came to appellant about January 1, 1956. Thereupon application was made pursuant to SDC 57.0801 to the county commissioners for abatement.  Although in form the petition was based on the ground that appellant "had no taxable interest in the property assessed against him", [cf. SDC 57.0801(4)] in substance it represented that the property was exempt from taxation after its conveyance to and use by the church.  The application was referred to the Attorney General.  He advised that the application should be denied for the reason that "The taxable status of property in this state relates to a day certain in each year, May 1st outside of cities and towns and March 20th

within cities and towns, and when the law thus provides, no change in ownership or fluctuations in value, or the like, in my opinion, occurring subsequently thereto, can be considered. The assessor in assessing properties must determine its ownership and value as of the applicable assessment date. It therefore follows that exemptions from taxation must exist as of the assessment day, and that land for a particular year is not exempt because subsequently it passes to an owner who is exempt from payment of taxes upon properties owned." Pursuant to the advice of the Attorney General the application was denied. On appeal to the circuit court that decision was affirmed.

Whether the intention of the legislature, as embodied in our taxation statutes, is to provide that the status of city real property, as exempt or non-exempt from taxation for the current year, is to be determined as of March 20th is the question we are to decide. If the legislature so intended, that intention can only be ascertained by the legitimate processes of construction; it has not made its intention explicit.

It is provided by section 6 of Article XI of the constitution of South Dakota as follows:

"The legislature shall, by general law, exempt from taxation, property used exclusively * * * for * * * religious * * * purposes * * *".

In providing for the annual listing of property subject to taxation the legislature said, SDC 57.0310:

"All real and personal property in this state, * * * except such as is hereinafter expressly excepted, is subject to taxation; and such property, or the value thereof, shall be entered in the list of taxable property for that purpose, in the manner prescribed in this chapter."

The exemption provisions appear in SDC 57.0311 including the following:

"All property described in this section to the extent herein limited shall be exempt from taxation: * * *

"(3) All property belonging to any * * * religious society and used exclusively for * * * religious purposes."

The time of assessment is fixed by SDC Supp. 57.0322 by which it is provided:

"All real and personal property subject to taxation shall be listed and assessed annually during the months of May and June, but the value of such property is to be determined according to its value on the first day of May preceding the assessment; provided, however, that in cities of the first, second, and third class all real and personal property shall be listed and assessed annually between the dates of March twentieth and June thirtieth, but the value of such property is to be determined according to its value on the twentieth day of March preceding the assessment."

The annual taxation proceedings include these additional matters. The records of the assessor are returned to the local district equalization board on or before the second Monday in June. SDC Supp. 57.0345. Such board is vested with power to correct errors on application of persons aggrieved. SDC 57.0401. The corrected and equalized roll is delivered to the county auditor on or before the third Monday in June. SDC Supp. 57.0403. County equalization follows. SDC 57.0405. Levies are made in August and September. Section 8, Ch. 10 of Ch. 41, Laws of 1955 and SDC 57.0505. The consolidated tax is thereafter extended upon the tax lists. SDC 57.0601. Taxes become due on the following first day of January. SDC 57.1004. Taxes on real property are a perpetual lien thereon as against all persons, except the United States and this state. SDC 57.0701.

Two additional provisions of statute should be quoted. SDC 57.0801 contains these words:

"Unless otherwise expressly provided, if any person, against whom an assessment has been made or a tax levied, claims such assessment or tax or any part thereof to be invalid for any reason

herein stated, the same may be abated, or the tax refunded if paid, and the board of county commissioners is authorized and empowered to abate or refund, in whole or in part, such invalid assessments or taxes in the manner hereinafter prescribed and in the following cases only: * * *

"(3) When the complainant or the property is exempt from the tax;"

By SDC 57.1113 it is provided:

"When real property has been sold or shall hereinafter be sold which at the time of its assessment was not taxable * * * the county shall refund the purchaser * * * the amount paid * * *."

■ At the outset we note the fact that the public policy of South Dakota, as declared by section 6, Article XI of the constitution and rendered effective by SDC 57.0311 is to exempt from taxation all property owned by religious societies and used exclusively for religious purposes. In recognition of this declared public policy we have said, "Exemptions are based upon the considerations of public policy. Constitutional and statutory provisions are to be given a reasonable, natural and practical construction to effectuate the purpose for which an exemption is created." Wagner Const. Co. v. City of Sioux Falls, 71 S.D.587, 27 N.W.2d 916, 920, and State ex rel. Eveland v. Erickson, 44 S.D. 63, 182 N.W. 315, 13 A.L.R. 1189.

In fact a tax had not been imposed upon the real property in question when it became "exempt from taxation" through ownership and use by the church. To the imposition of a tax thereon, a levy as well as an assessment was essential. City of Plankinton v. Kieffer, 70 S.D. 329, 17 N.W.2d 494. In this connection, perhaps, it should be pointed out that our statutes do not contain an express provision that the taxes levied on real property shall become a lien by relation as of the time the property is listed for assessment. Cf. United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327, and Martin County v. Drake, 40 Minn. 137, 41 N.W. 942. Nevertheless, in rejecting the petition for abatement, the

county commissioners acted upon the view that the legislature intended the taxable status of property, including its status as exempt or non-exempt, be determined as of the day the listing of the property commenced. Whether, if the legislature so intended, its enactments can withstand a contention that they are repugnant to the constitutional direction to exempt such property from "taxation" (cf. Puget Sound Power & Light Co. v. Cowlitz County, 38 Wash.2d 907, 234 P.2d 506) we need not now determine, as such a contention has not been presented. Our concern is with the intention of the legislature, as embodied in our taxation statutes.

In the light of the positive declaration of the legislature that property so owned and used shall be exempt from taxation, we turn to other statutes which seem to have bearing upon the question under consideration.

As the first step in the annual process of taxation the legislature has directed that all "property subject to taxation" be listed and valued. SDC 57.0310, supra. In cities of the class of Watertown the listing commences on March 20 and continues until June 30 but the valuation is as of March 20. Involved in this duty of the assessor is the determination that property placed on the list is not then exempt from taxation. However, we discern nothing in the purposes which obviously motivated the legislature in providing for the assessment roll or in its subsequent use in apportioning the tax burden which impels a conclusion that the legislature intended the status of property at the time of assessment, as either exempt or non-exempt, to be finally determinative of its exempt status in relation to the current tax. When these statutes were enacted, we doubt whether the history of the volume of the movement of property from or to the exempt class intervening the time of assessment and the time of levy had been such as to induce a belief that its status must necessarily be fixed as of the time of assessment in order to avoid serious loss of revenue, or even great inconvenience.

We look at SDC 57.1113, supra, which provides for a refund to a purchaser at a tax sale if property was

not taxable "at the time of its assessment". A casual reading of this section might lead to the conclusion it offers support for the view that the legislature intended a final determination of taxable status at the time of the assessment of property. On more mature consideration and after comparison of that section with SDC 57.0801, supra, under which this application for abatement was made, we have rejected that conclusion.

SDC 57.1113 was enacted for the benefit of **tax sale purchasers.** In making their purchases, such persons are subject to the rule of caveat emptor. Coughlin v. City of Pierre, 66 S.D. 523, 286 N.W. 877. Because of the inequity of enforcing that rule against a purchaser who has been misled by the public officers, this section was enacted to afford him relief within very narrow limits. It permits him to accept the representation of the assessment roll that the property was taxable at the time it was assessed, and in other respects not here material, it permits him to have a refund on the theory that he has been misled by representations implicit in the offer of the property at the tax sale by the county treasurer.

On the other hand SDC 57.0801, supra, offers relief to the **taxpayer** of much less limited scope. In so far as here material, that section permits abatement on application of a taxpayer who deems the tax proceedings invalid because the "property **is** exempt". It is significant that the relief afforded the taxpayer is not limited to the abatement of an assessment. As to him an abatement of a "levy" is authorized if the "property **is** exempt from the tax".

Finally we have reviewed the provisions of these revenue statutes dealing with personal property. No useful purpose will be served by reproducing any of those provisions. It is sufficient to observe that they reflect an intention to place a share of the burdens of government on personal property by assessing persons annually on the basis of the value of the personal property they own at the time of assessment. Cf. SDC 57.0331, 57.0337 and 57.0343. The liability for this tax is placed upon the person assessed. SDC 57.1026 and 57.0701. The tax upon

real property, on the other hand, is on property as such. Randall v. Perkins County, 72 S.D. 497, 36 N.W.2d 845. Because of the method the legislature has adopted in dealing with personal property there never is a levy upon that property as such; it is against the person, based on ownership at a fixed time. Therefore the question of whether the legislature intended to provide for a levy against personalty after it has become exempt from taxation never arises. In the case of real property, it has provided for a levy against each specific parcel of property; the power to impose such a levy after property has become exempt is involved; and hence the question whether the legislature actually intended to authorize such a levy. Its treatment of personal property, in our opinion, throws little or no light on that problem.

Under a statutory and constitutional background similar to ours the Nebraska court, which had held in a prior case that the personal liability of a corporation for a tax resulting from an assessment based on ownership of utility property was not affected by the transfer of the property to a city before tthe levy was made (cf. Wood v.McCook Waterworks Co., 97 Neb. 215, 149 N.W. 417, L.R.A.1915C, 125), held that real property was not subject to a tax levied thereon where subsequent to the assessment thereof, but before the levy it had become exempt from taxation. American Province of the Servants of Mary Real Estate Corp. v. Douglas County, 147 Neb. 485, 23 N. W.2d 714, 716. That court said, "When it is a question of ownership, it is the ownership on April 1 that controls. When it is a question of power to tax, that power must exist when it is assumed to exert the power; that is, when the property is taxed."

■ In placing a construction on the Minnesota statutes, the late Mr. Justice Mitchell took occasion to observe that "All tax laws have to fix upon some particular date in the year at which to determine the taxability, as well as the ownership and value, of property, for purposes of assessment and taxation." Martin County v. Drake, supra. It is with that philosophy in mind, and in the light of an understanding that notwithstanding the absence of an ex-

plicit expression of its intention, a court is warranted in extending legislative words by implication where necessary to effect its revealed intention or to avoid defeating its obvious purpose (82 C.J.S. Statutes § 327, p. 632; cf. Thompson v. Wordeman, 64 S.D. 261, 266 N.W. 142), that we have examined our statutes on taxation. As we have sought to point out, not only is an implication of such an extended meaning unwarranted because of the necessity of effecting a revealed legislative intention, but in order to infer such an intention we must close our minds to the public policy imbedded in the constitution, and to the positive declarations of the legislature that (1) property of class under consideration shall be exempt from taxation, and (2) if levy be made thereon, it is to be abated. In such circumstances, it is our view that if we were to declare such an intention to be revealed by these statutes, we would be legislating in the guise of exercising our powers of statutory construction. We are not at liberty so to do. And we think that in such circumstances we should not adopt the practical construction of the Attorney General. State ex rel. South Dakota Game & Fish Commission v. O'Neill, 62 S.D. 522, 254 N.W. 265.

The cases of other jurisdictions have been carefully studied. They are in conflict. Many of them are collected in the annotation to Jefferson Post No. 15, American Legion, Department of Kentucky v. City of Louisville, Ky., 280 S.W.2d 706, 707, 54 A.L.R.2d 992, at page 996. After considering the cases the Kentucky court said, "While there is a divergence of authority on the question, the prevailing view seems to be that the date as of which the lien for the taxes of a particular year attaches is controlling as concerns the allowance of an exemption from the taxes of that year."

In our opinion, because the property was exempt from taxation when the tax was levied, the petition for an abatement of the described tax should have been granted. Therefore, the judgment of the circuit court is reversed.

ROBERTS, RENTTO and HANSON, JJ., concur.